UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

CESAR VALLADOLID,

        Plaintiff,        Case No. 1:15-cv-470

v.        Honorable Janet T. Neff

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, this action will be dismissed because Defendants are immune or Plaintiff fails to state a claim against them.

**Factual Allegations**

Plaintiff is incarcerated in the Lakeland Correctional Facility (LCF). In his *pro se* complaint, he sues the Michigan Department of Corrections (MDOC), MDOC Director Daniel Heyns and the following LCF employees: Warden Bonita Hoffner, Deputy Warden Linda Beckwith, Resident Unit Manager Jon Houtz, Counselor Donald Winsley and Corrections Officer L. Cline.

From May 23, 2010 through November 14, 2011, Plaintiff received 18 electronic transfers to his prison trust account from Karen Booth. The amount of the transfers ranged from $30.00 to $110.00, with a total amount received of $1,255.00. On February 9, 2014, Defendant Cline issued a Notice of Intent to remove those funds from Plaintiff's account because they were received in violation of MDOC Policy Directive 04.02.105(O)(3), which prohibits prisoners from receiving funds from the family member of another prisoner, unless the individual sending the funds is a family member of the prisoner receiving the funds. (Notice of Intent to Conduct Administrative Hearing (NOI), docket #1-1, Page ID#18.) The NOI stated that, "Since Mrs. Booth is a family member of prisoner Booth (and no relation to prisoner Valladolid), the funds should be recovered and returned to Mrs. Booth at prisoner Valladolid's expense." (*Id.*)

Defendant Winsley held an administrative hearing on February 18, 2014. Plaintiff argued that because the fund transmissions were not rejected back in 2010 and 2011, but were credited to Plaintiff's account and subsequently spent, prison officials no longer had authority under the policy to recover the funds. Plaintiff relied upon section (P) of the policy, which provides:

> An electronic fund transfer that is believed to violate Paragraph O of this policy shall be rejected at the institution at which the prisoner is housed. If the funds are rejected prior to being transmitted to the prisoner's trust fund account, the sender shall be notified of the rejection and the reason for the rejection through the vendor; the vendor will return the transmitted funds to the sender. The sender may appeal the rejection to the Warden. If the funds are rejected after the transmittal, a hold shall

> be placed on the funds and the prisoner provided notice of the rejection and, unless waived, a hearing in the same manner as set forth below for rejected funds received through the mail.

Plaintiff further asserted that the policy did not authorize prison officials to seize future authorized incoming funds in order to replace the funds in question. Winsley adjourned the hearing in order to consult with his superiors.

On February 20, 2014, Defendant Beckwith allegedly issued a memorandum stating that the policy permitted prison officials to "issue a NOI on any funds they believe are in violation without any discretion to how long ago the transactions occurred or that the fund[s] were actually approved to be credited and spent, as long as they (LCF) discovered such transaction." (Compl., Page ID#6.) Plaintiff contends that Beckwith's statement "deviated from policy." (*Id.*) The issue also was raised at the Warden's Forum on March 12, 2014. Defendant Hoffner responded only that funds found to be in violation of policy would be confiscated and returned in accordance with policy. Following a continuation of the administrative hearing on March 20, 2014, Defendant Winsley found that a violation of policy had occurred and that the funds were to be recovered from Plaintiff and returned to Karen Booth at Plaintiff's expense. (Administrative Hearing Report, docket #1-1, Page ID#23.) The report further noted that Plaintiff could appeal the decision through the grievance process. (*Id.*)

Plaintiff filed a grievance regarding the matter. Defendant Houtz, the Step I respondent, concluded that the funds were properly removed from Plaintiff's trust account. (Step I Grievance Response, docket #1-1, Page ID#28.) Plaintiff's Step II appeal was denied by Defendant Hoffner. (Step II Grievance Response, docket #1-1, Page ID#29.) The Step I and II decisions were upheld at Step III of the grievance process. (Step III Grievance Response, docket

#1-1, Page ID#30.) Plaintiff also sent a notice to Defendant Hoffner informing her the LCF staff had acted in violation of Department policy and his due process rights, but did not receive any response. In addition, Plaintiff made a request for declaratory ruling, which was denied.

Plaintiff alleges that the seizure of funds from his prisoner account violated MDOC policy and state administrative rules, as well as his due process rights under the Fifth and Fourteenth Amendments. As of the time of filing his complaint, $169.47 had been seized from Plaintiff's prisoner account and he remains liable for the remaining balance. He contends that his indebtedness as a result of restitution order has "put a strain in plaintiff's life/incarceration with no fault of his own." (Compl., Page ID#10.) Plaintiff claims that he is unable to purchase goods from the prison store and approved vendors. He further alleges that he is unable to "properly put money on the phone, to buy stamped envelopes or electronic stamps through Jpay to contact family members and friends to assist plaintiff in pursuing his criminal conviction." (Compl., Page ID#10.)

Plaintiff seeks declaratory and injunctive relief, as well as monetary damages.

## Discussion

### I. Immunity

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of

Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the MDOC will be dismissed.

Plaintiff sues Defendant Heyns only in his official capacity. A suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). An official-capacity defendant is absolutely immune from monetary damages. *Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Wells v. Brown*, 891 F.2d 591, 592-93 (6th Cir. 1989). Therefore, the Court also dismisses the suit for monetary relief against Heyns in his official capacity. As set forth below, Plaintiff also fails to state a claim for injunctive or declaratory relief against Defendant Heyns.

        II.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more

than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff fails to make specific factual allegations against Defendant Heyns, other than his claim that Heyns failed to take action in response to the misconduct of his staff at LCF. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Heyns engaged in any active unconstitutional behavior. Accordingly, Heyns will be dismissed for failure to state a claim.

Plaintiff contends that the remaining Defendants violated his due process rights by requiring him to repay the funds he received from Karen Booth.[1] "The Fourteenth Amendment

---

[1] Plaintiff asserts a violation of his Fifth and Fourteenth Amendment due process rights. Due process rights were established through the Fifth Amendment and extended to the states through the Fourteenth Amendment. The protections are the same under either provision. *See United States v. Stewart*, 306 F.3d 295, 308 n. 2 (6th Cir. 2002) (noting that the Due Process Clauses of the Fifth and Fourteenth Amendments are "analogous"); *Medical Mut. v. deSoto*, 245 F.3d 561, 575 (6th Cir. 2001) ("[T]he language and policies behind the Due Process Clause of the Fourteenth Amendment are essentially the same as those behind the Due Process Clause of the Fifth Amendment."). Because this case concerns action by the State, the Court will analyze Plaintiff's claim under the Fourteenth Amendment.

protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of those interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Sixth Circuit has held that Plaintiff has a protected property interest in his inmate trust fund account. *See Hampton v. Hobbs*, 106 F.3d 1281, 1287 (6th Cir. 1997). Consequently, Plaintiff may not be deprived of his prison trust account funds without due process of law. *See Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). The due process of law gives the person notice and an opportunity to be heard before he is deprived of any significant property interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985) (*citing Mullane v. Cent. Hanover Bank & Trust*, 444 U.S. 277, 284 n. 9 (1980)).

In this case, Plaintiff received notice and a hearing before he was ordered to repay the funds. Plaintiff subsequently grieved the decision through the three-step prison grievance process. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Plaintiff, therefore, received all of the process he was due.

While Plaintiff claims that he cannot enjoy the same privileges as a result of his indebtedness, he does not allege facts that could establish the violation of a federally protected right.

Plaintiff's alleged inability to purchase goods from the prison store and approved vendors clearly does not violate the Eighth Amendment, which is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) (citation omitted). Moreover, the policy provides that new funds received by a prisoner shall not be used to satisfy his debts if it would leave the prisoner with less than $10 available during the month for personal use. PD 04.02.105(W)(1). Consequently, Plaintiff has at least $10 per month to spend on personal items. Plaintiff also claims that his lack of funds makes it difficult for him to communicate with his friends and family for purposes of assisting him in challenging his criminal conviction. While Plaintiff has a First Amendment right of access to the court, *Bounds v. Smith*, 430 U.S. 817, 821 (1977), he does not allege that he is unable to pursue his own criminal conviction, that he has been denied access to legal resources at the prison for that purpose, or that he has suffered actual injury with regard to his criminal proceedings. Plaintiff, therefore, fails to state a claim for denial of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

Plaintiff's allegations also suggest that his due process rights were violated in the grievance proceedings. Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the

grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process. Moreover, as set forth above, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300.

Furthermore, Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, to the extent that Plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction over the state law claims. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993).

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), because Defendants are immune or Plaintiff fails to state a claim against them.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: June 10, 2015                     /s/ Janet T. Neff
                                         Janet T. Neff
                                         United States District Judge